**Brenda BRUSH, Plaintiff,**

v.

**SAN FRANCISCO NEWSPAPER PRINTING COMPANY, Defendant.**

**No. C–70 102.**

United States District Court, N. D. California.

June 12, 1970.

**578**

Howard J. DeNike, San Francisco, Cal., for plaintiff.

William J. Dowling, III, of Cooper, White & Cooper, San Francisco, Cal., for defendant.

SWEIGERT, District Judge.

This is a suit brought under the Civil Rights Act of 1964, Title 42 U.S.C. §§ 2000e to 2000e–15 by plaintiff, a woman in the market for employment in the San Francisco Bay Area, against defendant newspaper printer and publisher of the daily San Francisco Chronicle, the daily San Francisco Examiner and the Sunday Chronicle-Examiner, seeking a declaratory judgment and an injunction enjoining defendant from listing employment advertisements in its classified advertising sections under separate "Men" and "Women" headings when sex is not a bona fide occupational qualification and requiring defendant to provide listings without "Men" and "Women" headings where sex is not a bona fide occupational qualification.

THE RECORD

The case is now before the court on plaintiff's application for a preliminary injunction based upon the complaint and an evidentiary record consisting of plaintiff's affidavit of March 30, 1970, and an affidavit of Wright filed April 2, 1970. Defendant's evidentiary record in opposition consists of an affidavit of McLain filed May 21, 1970.

The complaint alleges (Par. VI) that defendant publishes "Help Wanted" listings under separate "Men" and "Women" headings without reference to whether sex is a bona fide occupational qualification.

However, by stipulation filed March 13, 1970, it is agreed that, so far as "Help Wanted" advertisements are concerned, defendant provides three listings (a) Help Wanted, Women; (b) Help Wanted, Men, and (c) a third neutral listing, Wanted, Men, Women; that the decision as to these listings is the advertiser's and that defendant places the "Help Wanted" ads under the listing designated by the advertiser.

In her affidavit of March 30, 1970, plaintiff sets forth that her occupation has been in the area of "research and planning in the field of human resources;" that this occupation is one in which sex is not a bona fide occupational qualification; that in November, 1969, she was unemployed and seeking employment and in order to secure a position consulted the classified advertising sections of the daily San Francisco

Chronicle, the San Francisco Examiner and the Sunday Chronicle-Examiner; that in surveying the advertisements listed in the "Help Wanted" section, many jobs which interested her, were listed under the heading "Help Wanted—Men" although sex was not a bona fide occupational qualification for such jobs; that she was effectively discouraged from making application due to the inference created by the advertisement that the employer did not want to hire a woman; that this was particularly true when the advertisement called for a telephone response; that as a result of being discouraged she did not answer such advertisements, but would have done so had they been listed without a preference for men.

The complaint also (Par. VII) alleges that defendant publishes "Job Wanted" listings under separate "Men" and "Women" headings without providing a separate designated heading where there can be listed jobs in which sex is not a bona fide occupational qualification.

So far as "Job Wanted" advertisements are concerned plaintiff's affidavit of March 30, 1970 sets forth that she requested defendant to place a "Job Wanted" ad under a listing without sex heading, since her occupation did not involve sex as a bona fide occupational qualification, but was told that "Jobs Wanted" could only be listed under either male or female headings with the suggestion, however, that she "list under both headings" at double expense.

However, the parties have since stipulated on the record in open court that defendant will henceforth, when requested to do so by an advertiser placing a "Job Wanted" advertisement, make available to the advertiser a neutral column heading which contains no reference to either male or female.[1]

## THE STATUTE INVOLVED

Title 42 U.S.C. § 2000e–3(b) provides that "it shall be an unlawful employment practice for an employer, labor organization or employment agency to print or publish or cause to be printed or published any notice or advertisement relating to employment by such an employer or membership in or any classification or referral for employment by such a labor organization or relating to any classification or referral for employment by such an employment agency, indicating any preference, limitation, specification or discrimination based on race, color, religion, *sex* or national origin *except* that such a notice or advertisement may indicate a preference, limitation, specification or discrimination based on religion, sex or national origin *when* religion, sex or national original is a bona fide occupational qualification for employment." (emphasis added).

Section 2000e–2(b) provides: "It shall be an unlawful employment practice for an employment agency to fail or refuse to refer for employment, or otherwise to discriminate against, any individual because of his race, color, religion, sex or national origin."[2]

---

1. This stipulation has been entered into by defendant with the express reservation that it is made without acknowledging any misconduct or unlawful employment practices by reason of past conduct and without retreating from its position that the provisions of the Civil Rights Act of 1964, relating to employment agencies, do not extend to defendant's activities in the printing and circulation of classified employment want ads in newspapers and expressly reserving its position that it does not by reason of those activities fall within the above provisions of the Act.

2. Section 2000e–2(e) contains an exception similar to that in Section 2000e–3(b) to the effect that notwithstanding any other provision of the Act, "it shall not be unlawful for an employer to hire and employ employees or for an employment agency to classify on the basis of religion, sex or national origin in those certain instances where religion, sex or national origin is a bona fide occupational qualification reasonably necessary to the normal operation of that business or enterprise."

It will be noted that the exception set forth in § 2000e–2(e) and 2000e–3(b)

Section 2000e(c) defines the term "employment agency" as "any person regularly undertaking with or without compensation to procure employees for an employer or to procure for employees opportunities to work for an employer * * *."

## THE ISSUE

The issue in this case is not whether Congress *could* have included newspapers within the civil rights scheme of the statute along with employers, employment agencies and labor unions. Nor, is the issue whether Congress *should* have included newspapers in order to make the legislation more effective (as plaintiff argues it would) by extending its scope and aiding in its enforcement. Rather, the only question before this court is whether Congress *did* include newspapers.[3]

Certainly, the term "employment agency" does not in common parlance suggest "newspaper." Plaintiffs contend, however, that Congress, nevertheless, so broadly defined "employment agency" in this statute as to include newspapers, arguing that newspapers, like employment agencies, do regularly undertake "to procure employees for an employer or to procure for employees opportunities to work for an employer."

■ However, the statutory requirement that an employment agency be one that "regularly" undertakes to procure employees or employment opportunities indicates that the Congress had in mind to include only those engaged to a significant degree in that kind of activity *as their profession or business.*

■ Newspapers, although in the business of printing and publishing advertising copy presented by employers, professional employment agencies and job seekers, are not in any other or ordinary sense engaged in the business of procuring employees or employment opportunities—any more than they are engaged in the used car business or in the real estate business when they accept and print advertising copy designed to bring buyers and sellers together in those fields.

If the definition here in question is construed to include newspapers, then it would follow that a newspaper is subject to all the prohibitions and penalties expressly imposed by the statute on employers and on ordinary employment agencies.

One of these prohibitions is that it would be "an unlawful employment practice" for the newspaper "to print or publish or cause to be printed or published any notice or advertisement relating to employment * * * indicating any preference, limitation, specification, or discrimination, based on race, color, religion, sex or national origin *except* that such a notice or advertisement may

applies only to preferences and specifications based on religion, sex or national origin and does not apply to preferences or specifications based on race or color. As to the latter, the prohibitions of the Act are absolute and all persons, including newspapers, presumably have notice of that absolute prohibition. It is only where the preference or specification is based on religion, sex or national origin that the exception, involving a judgment as to whether such preference or specification is a bona fide occupational qualification for the employment, applies.

3. Defendant also contends that plaintiff has not complied with statutory prerequisites for presenting to this court her grievance concerning the "Job Wanted" classification, pointing out that she failed

to present that issue to the Equal Employment Opportunities Commission prior to this suit as required by 42 U.S.C. § 2000e-5. It is true that the complaint herein alleges only that plaintiff's grievance filed prior to this suit with the Equal Employees Opportunities Commission referred only to the "Help Wanted" matter, and that a "Right to Sue" letter referring to that charge was received from the Commission. However, plaintiff's affidavit of March 30, 1970 is to the effect that she had in fact filed two grievances with the Commission prior to this suit, one concerning the "Help Wanted" matter and another concerning the "Job Wanted" matter; that she was unaware that the Commission's "Right to Sue" letter referred only to the "Help Wanted" matter; that subse-

indicate a preference, limitation, or specification, or discrimination based on religion, sex or national origin *when* religion, sex or national origin is a bona fide occupational qualification for employment." (emphasis added).

In short, the newspaper would have to make its own judgment in each case concerning whether advertising copy presented to it by an employer, or by a regular employment agency, and indicating a preference or specification based on sex, falls within the statutory provision permitting such a specification and preference *only* when such preference or specification "is a bona fide occupational qualification for employment."

The factual information pertinent to a judgment whether sex is really an "occupational qualification" for any particular employment and, if so, whether such occupational qualification is asserted in "good faith," is primarily and peculiarly within knowledge of the employer who presents "Help Wanted" advertising copy.

Such information would also be presumably within the knowledge of regular employment agencies which make it their special business to interview employers or persons seeking their professional services and thus to obtain detailed background information pertinent to whether sex is really a good faith occupational qualification for any particular job or any particular business.

But, such information is not ordinarily within the knowledge of the newspaper to which the employer or the employment agency presents the advertising copy—ordinarily over a desk or by mail. Nor does the pertinent background information necessarily appear on the face of the advertising copy presented to the newspaper.

When an employer or an ordinary employment agency places ad copy indicating a preference or specification as to sex concerning a generally described job or business, it may have a basis in fact for the preferral or specification even though such factual basis does not appear in the copy itself.

It is stipulated in this case that defendant newspaper does not undertake or attempt to determine whether a "Help Wanted—Men" or a "Help Wanted—Women" ad should appear under some other available listing, nor, in particular, does the newspaper undertake or attempt to ascertain from the advertiser, or otherwise to determine, whether the sex under which listing the advertisement is placed is a "bona fide occupational qualification for the position advertised." (Stipulation of March 13, 1970).

Yet, according to plaintiff, defendant newspaper henceforth must make this decision from the face of the copy, itself, or, exercising due diligence in the matter, must in some way attempt to obtain the pertinent, detailed information or description concerning each particular job, through interviews with the employer or the employment agency, or, if unable to satisfy itself in that manner, must refuse to publish the ad.

Certainly such interviewing and screening is not a usual activity of the ordinary newspaper—as it is the business of an employer or a professional employment agency—even though the newspaper may sometimes help some individual advertisers with suggestions about the wording and form of their ad.

Yet, if plaintiffs are correct in their contention that the term advertising agency includes newspapers, the latter must henceforth make the necessary personnel and procedural arrangements to control, supervise, screen and otherwise investigate each advertisement published by them in order to meet the newspaper's responsibility under the statute—the very matters which, according to the legislative history of Section 2000e–3(b), were *not* intended by the Congress.

quent to the filing of the complaint she received a second "Right to Sue" letter

from the Commission permitting suit on the "Job Wanted" matter.

The House Judiciary Committee Report on the Civil Rights Act of 1964, 2 U.S.Code Cong. & Adm.News (1964) p. 2403, commenting on this Section 2000e–3(b), states: "The prohibitions of this section do not require newspapers and other publications to exercise any control or supervision over, or to do any screening of the advertisements or notices published by them."

This indicates quite clearly, we believe, that the Congress had no intention of imposing upon newspapers the obligations imposed upon employers and ordinary "employment agencies."

Also, at 110 Cong.Rec. 7213, April 4, 1964, appears an "Interpretative Memorandum" prepared by Senators Clark and Case, Senate floor managers of the Civil Rights Act. Referring to this Section 2000e–3(b) the memorandum states that the section "prohibits discriminatory advertising by employers, employment agencies and labor organizations * * *. It should be noted that the prohibition does not extend to the newspaper or other publications printing the advertisement. It runs solely to the sponsoring firm or organization."

Fully aware of the caution with which legislative history may be considered as indicating an exception to the provisions of public interest legislation (NLRB v. Fruit and Vegetable Packers etc., Local 760, 377 U.S. 58, 84 S.Ct. 1063, 12 L. Ed.2d 129 (1963); United States v. Oregon, 366 U.S. 643, 81 S.Ct. 1278, 6 L. Ed.2d 575 (1961)), we are convinced that the legislative history in the pending case shows that the term "employment agency" was used in its ordinary sense rather than in such a broad sense as would include newspapers.

The General Counsel of the Equal Employment Opportunities Commission who now appears as Amicus Curiae in support of plaintiff's claim that "employment agency" includes newspapers, expressed quite the opposite opinion in an Opinion Letter (GC–159–65) of October 1, 1965, conceding at that time that: "A newspaper is *not* an employment agency within the meaning of Section 701(c)," (Sec. 2000e–3(b). (emphasis added).

Notwithstanding this legislative history, plaintiffs, arguing the probability that Congress intended to include newspapers, point out that laws often require newspapers to screen and make judgments concerning the content of their published material, e.g., false advertising in general (Cal.B. & P.Code, Sec. 17500); misleading advertisements re commission salesmen (Cal.Labor Code, Sec. 976); false real estate advertising (B. & P.Code, Sec. 11022).[4]

It will be noted, however, that each of these statutes, dealing with false or misleading advertising and broadly applicable to all "persons," expressly exclude newspapers from their application *unless* it be shown that the newspaper acts in bad faith and with knowledge of the falsity of the advertisements.

The Civil Rights Act sections now under scrutiny are not made broadly applicable to all "persons," but only to "employer," "employment agencies" and "labor unions." Since the statute is neither made specifically applicable to newspapers nor made so broadly applicable as to include newspapers, there was no reason for any express exclusion, qualified or otherwise, of newspapers. Indeed, in our opinion, the absence of any such exclusion is persuasive that Congress never contemplated a claim that newspapers were included, For, if it had so contemplated, it would in all probability have added at least a quali-

4. Plaintiffs also cite such statutes as: Advertising re miscarriage or abortion (Cal.B. & P.Code, Sec. 601) and obscenity statutes (Cal.Penal Code Sec. 313), both of which are quite different from other advertising statutes in that, in addition to being broadly applicable to newspapers, they concern subject matter which can be determined from the face of the ad itself without reference to knowledge of other pertinent matter; also the libel laws (Cal.Civil Code, §§ 44–48a) which are different in that they are made broadly applicable to newspapers and further, even in that application contain special qualifications as to newspapers (e. g., Sec. 48a).

fied exclusion of newspapers similar to the exclusion clauses commonly used in the advertising statutes above cited.

We find no such exclusionary clause in the statute. The only provision in the statute is Section 2000e–5(g) to the effect that at the civil action stage of any grievance proceeding the court, before granting relief, must find that any unlawful employment practice of the respondent was "intentional."

Another provision appears, not in the statute, but in certain Commission "Guidelines on Discrimination Because of Sex." Par. 1604.1–1604.7, especially 1604.6(b). This administrative provision, after setting forth a long series of guidelines concerning the problem whether sex is a bona fide occupational qualification for a job or business, relaxes the statute a bit insofar as it applies to "employment agencies" (vis a vis employers). It provides that "An employment agency that receives a job order containing an unlawful sex specification will share responsibility with the employer placing the job order if the agency fills the other knowing that the sex specification is not based upon a bona fide occupational qualification. However, an employment agency will not be deemed to be in violation of the law, regardless of the determination as to the employer, if the agency does not have reason to believe that the employer's claim of bona fide occupation qualification is without substance *and* the agency makes and maintains a written record available to the Commission of each job order. *Such record shall include the name of the employer, the description of the job and the basis for the employer's claim of bona fide occupational qualification. It is the responsibility of employment agencies to keep informed of opinions and decisions of the Commis-sion on sex discrimination."* (emphasis added).

It will be noted that the limited exclusion granted to "employment agencies" is conditioned upon their maintaining certain kinds of records containing certain kinds of information concerning "sex as a bona fide occupational qualification," e.g., keeping data re "description of the job" and data re "the basis for the employer's claim of bona fide occupational qualification."

That kind of record keeping, along with the personnel and procedural arrangements which it entails, is appropriate for regular, professional advertising agencies but it is not ordinarily maintained by nor is it ordinarily expected of a newspaper.

Entirely apart from the legislative history above set forth, this limited exclusion, conditioned as it is on such a record keeping function, persuades us that neither the Congress nor the Commission had newspapers in mind when using the term "employment agency."

Certainly, if the Congress intended to impose on newspapers, not only new responsibilities but also new personnel and procedural activities, it could have and in our opinion would have specified newspapers along with employers, labor unions and employment agencies. It not only did not do so, it clearly expressed its contrary intent in the legislative history leading to the passage of the legislation.

If, as plaintiff argues, the legislation would be improved by inclusion of newspapers, such inclusion must be accomplished by the Congress—not by the courts.

For the foregoing reasons plaintiff's application for a preliminary injunction is denied and the suit is dismissed for failure of the complaint to state a claim.