Ferdinand SCAGLIONE, Plaintiff,

v.

CHAPPAQUA CENTRAL SCHOOL DISTRICT and Westchester County Personnel Office Defendants.

No. 01 CIV.1810(CM).

United States District Court, S.D. New York.

July 11, 2002.

Ferdinand C. Scaglione, Jr., Yonkers, NY, pro se.

Mark C. Rushfield, Shaw & Perelson, L.L.P., Highland, NY, for Chappaqua Cent. School Dist.

Lori Ann Alesio, County Atty., White Plains, NY, for Westchester County Personnel Office.

MEMORANDUM DECISION AND ORDER DENYING DEFENDANT'S MOTION TO DISMISS

McMAHON, District Judge.

Defendant Westchester County Personnel Office ("WCPO")[1] moves to dismiss pro se plaintiff Ferdinand Scaglione's claims for discrimination under Title VII of the Civil Rights Act, 42 U.S.C. §§ 2000e-e17, for lack of subject matter jurisdiction, pursuant to Rule 12(c) of the Federal Rules of Civil Procedure (FRCP). WCPO claims that because it is neither Plaintiff's employer nor an employment agency, it cannot be sued under Title VII.

For the reasons stated below, defendant's motion to dismiss is denied.

### I. Standard for Evaluating Rule 12(c) Motion to Dismiss

"Although subject matter jurisdiction is usually challenged by way of a Rule

---

1. The Westchester County Department of Personnel was recently renamed the Department of Human Resources.

12(b)(1) motion to dismiss, it may also be raised on a Rule 12(c) motion for judgment on the pleadings." *Peters v. TimeSpan Communications, Inc.*, No. 97 Civ. 8750, 1999 WL 135231, *2, 1999 U.S. Dist. LEXIS 2797 at *8–9 (S.D.N.Y. Mar. 12, 1999). The standard for evaluating a motion to dismiss pursuant to Rule 12(c) is the same as that under Rule 12(b)(6). *Irish Lesbian & Gay Org. v. Giuliani*, 143 F.3d 638, 644 (2d Cir.1998). In evaluating a motion to dismiss pursuant to Rule 12(b)(6) (and hence Rule 12(c)), courts must "take as true all of the allegations contained in plaintiff's complaint and draw all inferences in favor of plaintiff." *Weinstein v. Albright*, 261 F.3d 127, 131 (2d Cir.2001). Although courts must "read the pleadings of a pro se plaintiff liberally and interpret them 'to raise the strongest arguments that they suggest,'" *McPherson v. Coombe*, 174 F.3d 276, 280 (2d Cir.1999) (quoting *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir.1994)), "no presumptive truthfulness attaches to the complaint's jurisdictional allegations," if any. *Guadagno v. Wallack Ader Levithan Ass'n*, 932 F.Supp. 94, 95 (S.D.N.Y.1996).

## II. Facts Pertinent to the Motion

### A. *The Parties*

Plaintiff Ferdinand Scaglione is a 67 year-old resident of Yonkers, New York. Mr. Scaglione, a former employee of the Mamaroneck Union Free School District, is currently unemployed. Defendant Chappaqua Central School District is a school district in Chappaqua, a village in the Town of North Castle in Westchester County, New York. Defendant Westchester County Personnel Office is the municipal civil service administrator for the county of Westchester. WCPO is responsible for overseeing and administrating all of the hiring procedures for civil service positions in towns and villages within the county.

### B. *Background to Claims*

Plaintiff Ferdinand Scaglione was employed as an Assistant Superintendent of Buildings and Grounds in the Mamaroneck Union Free School District ("MUFSD") from July 1992 to June 1996. Brancati Aff. ¶ 6. Plaintiff's employment with MUFSD ended in June 1996 when his position was abolished. *Id.* While at MUFSD, Plaintiff had on several occasions complained to both MUFSD and defendant WCPO about what he believed to be illegal employment practices at MUFSD, including sexual, racial, and age discrimination. Alesia Decl. Exh. B ¶¶ 4–13. Plaintiff continued to complain about MUFSD and WCPO's practices even after he was fired. Plaintiff felt that his complaints were going unheeded, and filed an official complaint with the U.S. Equal Employment Opportunity Commission (EEOC), in which he contended that MUFSD and WCPO had colluded and discriminated against him both because of his age and also in retaliation for his complaints about their alleged discrimination. *Id.* at ¶ 20.

Since Plaintiff's termination from MUFSD in 1996 was due to the abolition of his position, he was automatically placed on a "preferred eligible list" for Assistant Superintendent of Buildings and Grounds (Assistant SOBG) positions. Mem. in Supp. of Def.'s Mot. to Dismiss at 3. Plaintiff was already on the certified eligible list for the SOBG position (not the Assistant's position). *See* Alesio Decl. at Exh. A, p. 13. According to Westchester County's Civil Service Rules, when a local municipality wants to fill a vacancy, it first contacts the WCPO to request a certified eligible list. *Id.* at 4. *See also* Westchester Cty., N.Y. Civ. Serv. Rules, R. 19 (appended to Plaintiff's Mem. in Opp. of Def.'s Mot. to Dismiss) ("Westchester Rules"). The municipality then canvasses that list and determines who will be hired. *Id.*

When a *preferred* eligible list exists for an open position, a municipality must first offer that open position to a person on the preferred eligible list—provided the open position is the same or similar to the position whose abolition led to that person's placement on the preferred eligible list. *Id.* Had Plaintiff's been the only name on the preferred eligible list for an Assistant SOBG vacancy, he should have been hired to fill that vacancy.[2]

Plaintiff alleges Title VII violations stemming from the hiring of Mr. Richard Gardner as the interim SOBG at CCSD in August 1998. Mr. Gardner was plaintiff's superior at MUFSD when plaintiff was fired in 1996.

In September 1998, during Mr. Gardner's tenure as interim SOBG, CCSD advertised in the *New York Times* in an effort to fill the SOBG position on a permanent basis. In December of that year, plaintiff called CCSD to inquire about the position, but was told that it had been filled and that he need not apply. Compl. at 7. Concerned that he had not been canvassed by CCSD prior to its filling this position (as required by law), plaintiff filed a request for information under New York's Freedom of Information Law (FOIL). *Id. See also* N.Y. Pub. Off. Law §§ 84–90 (McKinney 2002). When he received the response to his FOIL request,[3] plaintiff first learned that Mr. Gardner was interim SOBG. Plaintiff also learned that Gardner's central function as interim SOBG was to assist CCSD in its recruitment of a permanent SOBG, who would carry the newly-created title of Director of Operations and Maintenance (DOM). Compl. at 7. The response also explained that CCSD was already in the process of appointing a Mr. Anthony Maida to that position.

Plaintiff found this response "incomplete," and resubmitted his FOIL request a month later, asking specifically for papers "reclassifying" the SOBG position to a Director-level position. *Id.* At the time, Plaintiff spoke with Margot Ferrauti at CCSD, who explained that plaintiff's requests for the documentation materials related to the reclassification of the SOBG position would be denied. *Id.* Although there are specific procedures and forms required for the reclassification of a civil service position, *see* Westchester Rules, R. 23.2, Ms. Ferrauti claimed that the necessary forms were never created, because WCPO never required nor requested them.

Plaintiff believed that CCSD and WCPO were colluding to prevent his being hired by CCSD. Plaintiff specifically believed that WCPO was retaliating for Plaintiff's EEOC complaint against it resulting from his employment at MUFSD. Plaintiff again sought the help of the EEOC. In Plaintiff's second EEOC complaint, he charged CCSD with age discrimination and WCPO with retaliation for Plaintiff's first suit against WCPO (stemming from the MUFSD incidents). After an investigation, the New York District Office of the EEOC issued a Determination Letter on the matter. The EEOC determined on September 19, 2000 that there was probable cause:

> There is no evidence that [CCSD] followed proper civil service procedures in [the appointment of Mr. Gardner]. Although this matter was brought to the attention of WCPO there is no evidence that it followed its mandate to ensure

---

**2.** There is no information in the pleadings regarding the number of names on the preferred eligible list for the time period in question.

**3.** Plaintiff has not provided these written responses to the Court.

that all appointments are made pursuant to civil service law.

Based on the record in its entirety, *I find that it is more likely than not that Respondents retaliated against [plaintiff] because he had protested what he perceived to be age discrimination,* in violated of the Age Discrimination in Employment Act of 1967, as amended. EEOC Determination Letter, appended to Compl. at 9–10 (emphasis added) ("EEOC Determination Letter"). On December 12, 2000, the EEOC decreed that conciliation efforts had failed, and issued plaintiff a right to sue letter.

### C. The Complaint

On March 1, 2001, Plaintiff filed the complaint in the current action.[4] On a preprinted employment discrimination action sheet, Plaintiff indicated that he was bringing causes of action under both Title VII and the ADEA. WCPO (and only WCPO) has moved to dismiss the case pursuant to FRCP Rule 12(c) solely on Title VII grounds, claiming that this court lacks jurisdiction over the subject matter as against it, because it is neither plaintiff's employer nor an employment agency.

For the reasons stated below, defendant's motion to dismiss is denied.

### III. Discussion

Title VII applies to both "employers" and "employment agencies." 42 U.S.C. § 2000e–2(a),(b); *Astarita v. Urgo Butts & Co.,* No. 96 Civ. 6991, 1997 WL 317028, *3, 1997 U.S. Dist. LEXIS 8112 at *8–10

(S.D.N.Y. June 10, 1997). For this Court to have subject matter jurisdiction over the instant action, WCPO must fall within the meaning of one of these two terms with respect to plaintiff. *See EEOC v. Arabian Am. Oil Co.,* 499 U.S. 244, 248–49, 111 S.Ct. 1227, 113 L.Ed.2d 274 (1991)(describing the term "employer" as used in Title VII as "jurisdictional"). *See also Kern v. City of Rochester,* 93 F.3d 38, 45 (2d Cir.1996)("Title VII is an employment law, available only to employees (or prospective employees) seeking redress for the unlawful employment practices of their employers." (*quoting Tadros v. Coleman,* 717 F.Supp. 996, 1002 (S.D.N.Y.1989), *aff'd,* 898 F.2d 10 (2d Cir.), *cert. denied,* 498 U.S. 869, 111 S.Ct. 186, 112 L.Ed.2d 149 (1990)))(internal quotations omitted).

### A. WCPO is not plaintiff's "employer"

■ Even when taking the facts plaintiff alleges as true, WCPO is not plaintiff's "employer."

Title VII makes it illegal for an employer to "fail or refuse to hire" someone because of his "race, color, religion, sex, or national origin." § 2000e–2(a)(1). Furthermore, an employer may not retaliate for an employee's whistleblowing. § 2000e–3(a). *See also* 29 U.S.C. § 623(d); *Manoharan v. Columbia Univ. College of Physicians & Surgeons,* 842 F.2d 590, 593 (2d Cir.1988).

An "employer" is defined (in relevant part) as "a person engaged in an industry affecting commerce who has fifteen or

---

**4.** On the same day, March 1, 2001, Plaintiff filed a second action in this court against WCPO, this time with MUFSD as a co-defendant. This suit arose out of the incidents at MUFSD that led to Plaintiff's first complaint with the EEOC (the complaint that Plaintiff alleges is the source of WCPO's retaliation in this action). As with the instant action, Plaintiff had received a right to sue letter from the EEOC regarding that action. On Feb. 22,

2002, Judge Charles L. Brieant dismissed the case against both plaintiffs in a memorandum decision. That decision does not discuss the application of Title VII or the ADEA to WCPO, since the claims against WCPO were found to be time-barred. *See Scaglione v. Mamaroneck Union Free Sch. Dist.,* No. 01 Civ. 1811(CLB), (S.D.N.Y., Filed Feb. 25, 2002).

more· employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year, and any agent of such a person." § 2000e(b).

The most recent Second Circuit case to discuss the definition of a Title VII "employer" is *York v. Ass'n of the Bar*, 286 F.3d 122 (2d Cir.2002). In *York*, the Second Circuit held that a direct remunerative relationship must exist between two parties for the hiring party to be considered an "employer" under Title VII. The Second Circuit explained that "a prerequisite to considering whether an individual is [an employee] is that the individual have been hired in the first instance." 286 F.3d at 125 (quoting *O'Connor v. Davis*, 126 F.3d 112, 115 (2d Cir.1997), *cert. denied* 522 U.S. 1114, 118 S.Ct. 1048, 140 L.Ed.2d 112 (1998))(internal quotations omitted). The *York* court also held that "the question of whether someone is or is not an employee under Title VII usually turns on whether he or she has received direct or indirect remuneration from the alleged employer." *Id.* at 125–26 (quoting *Pietras v. Bd. of Fire Comm'rs of the Farmingville Fire Dist.*, 180 F.3d 468, 473 (2d Cir.1999))(internal quotations omitted). Thus the Second Circuit reaffirmed the rule of earlier cases that "where no financial benefit is obtained by the purported employee from the employer, no 'plausible' employment relationship of any sort can be said to exist." *Id.* (quoting *O'Connor*, 126 F.3d at

115–16) (citations and internal quotations omitted).[5]

As WCPO correctly notes, "it is undisputed that plaintiff was never employed by the County, nor did he every seek employment with the County." Rep. Mem. of Law at 2. In fact, "plaintiff has never claimed that he was an employee of the County." Plaintiff's Mem. in Opp. of Def.'s Mot. to Dismiss. Nor has Plaintiff alleged that he attempted to obtain employment with the County of Westchester, which would satisfy the "direct employment relationship" test in a failure to hire case like this one. Thus, WCPO is not an "employer" within the meaning of Title VII where Plaintiff is concerned.

### B. WCPO is an "employment agency" with respect to plaintiff

■ Although WCPO can avoid liability as an "employer," it may nonetheless be liable under ·Title VII because it qualifies as an "employment agency" within the meaning of those statutes.

Title VII makes it unlawful for an employment agency to "fail or refuse to refer for employment, or otherwise to discriminate against, any individual because of his race, color, religion, sex, or national origin." 42 U.S.C. § 2000e–2(b). Like employers, employment agencies may not retaliate against those opposing illegal practices. § 2000e–3(a). Title VII defines an employment agency (in relevant part)

---

5. *O'Connor* and *York* and *Pietras* appear to contradict the Second Circuit's holding in *Spirt v. Teachers Insurance and Annuity Ass'n*, 691 F.2d 1054, 1063 (2d Cir.1982) *vacated on other grounds*, 463 U.S. 1223, 103 S.Ct. 3565, 77 L.Ed. 1406 (1983), where Judge Pierce held:

> [I]t is generally recognized that the term 'employer,' as it is used in Title VII, is sufficiently broad to encompass any party who significantly affects access of any individual to employment opportunities, regardless of whether that party may techni-

cally be described as an 'employer' of an aggrieved individual as that term has generally been defined at common law.

691 F.2d at 1063 (citations and internal quotations omitted). Since *O'Connor* and *York* and *Pietras* are the most recent Second Circuit cases defining "employer," and since *Spirt* seems to have more applicability to defining a Title VII "employment agency," *see* III–B–2, *infra*, than to defining an "employer," this Court finds that a direct employment relationship is a necessary trait of a Title VII "employer."

as "any person regularly undertaking with or without compensation to procure employees for an employer or to procure for employees opportunities to work for an employer and includes an agent of such a person." § 2000e(c). "This language most naturally is read to mean 'prospective employees.'" *Robinson v. Shell Oil Co.*, 519 U.S. 337, 343, 117 S.Ct. 843, 847 n. 3, 136 L.Ed.2d 808, 814 (1997). Furthermore, "any person" includes "governments" and "government agencies," § 2000e(a), and the 1972 amendments to Title VII specifically removed the exemption of "political subdivisions" of States from classification as an "employment agency." *See* Equal Employment Opportunity Act of 1972, Pub.L. No. 92–261, 86 Stat. 103. *See also Vick v. Texas Employment Comm'n*, No. 70–H–1164, 1973 WL 237, 1973 U.S. Dist. LEXIS 12104 (S.D.Tex. Aug.30, 1973).

Over 25 years ago, the Seventh Circuit noted in an ADEA case that "[l]itigation concerning the meaning of the term employment agency is rather sparse." *Cannon v. Univ. of Chicago*, 559 F.2d 1063, 1075–76 (7th Cir.1976). *See also id.* at 1076 (noting that the few cases discussing the term "employment agency" were Title VII cases). Unfortunately, little has happened in the last quarter-century to alter that. There are very few cases invoking 42 U.S.C. § 2000e–2(b) (or 29 U.S.C. § 623(d), the similarly worded ADEA provision), and the few that do almost invariably involve an entity that is indisputably an "employment agency." *See, e.g., Brennan v. Paragon Employment Agency, Inc.*, 356 F.Supp. 286 (S.D.N.Y.1973).

Given the lack of guidance from the courts of this circuit (and others), this Court will analyze the various definitions other courts have given to the term "employment agency" in the context of Title VII. As described below, all three of the methods considered lead to the same conclusion—WCPO is, or at least may be, an "employment agency" under Title VII and the ADEA.

### 1. The Brush/Close Reading Approach

An early case in which a court attempted to interpret 42 U.S.C. § 2000e(c) (which defines "employment agency") was *Brush v. San Francisco Newspaper Printing Co.*, 315 F.Supp. 577 (N.D.Cal.1970). In *Brush,* the defendant newspaper had divided its "Help Wanted" and "Job Wanted" sections of the classified advertisements into a men's, women's, and gender-neutral categories. A woman in the area seeking a job challenged this format as a violation of Title VII. The issue before the court on a motion to dismiss was whether Congress had included newspapers in its definition of "employment agency" contained in 42 U.S.C. § 2000e(c). *Id.* at 580. The *Brush* court concluded that the defendant newspaper was *not* an employment agency because "the statutory requirement that an employment agency be one that 'regularly' undertakes to procure employees or employment opportunities indicates that the Congress had in mind to include only those engaged to a significant degree in that activity *as their profession or business." Id.* (emphasis in original). Several cases have approved of *Brush*'s reasoning, and other litigations in the early 1970s challenging gender-based classified advertisement schemes were treated similarly. *See, e.g., Greenfield v. Field Enterprises,* 4 Fair Empl. Prac. Cas. (BNA) 548 (N.D.Ill.1972).

*Brush*'s approach is not particularly complex, essentially requiring a close reading of the statute. Its interpretation of the statute simply underlines that Congress intended Title VII to apply only to those that act *regularly* as employment agencies, not those that might occasionally refer a potential employee to someone else.

It is questionable whether defendant WCPO is an "employment agency" within the meaning of *Brush.* The "business" of municipal civil service commissions like the WCPO includes the certification of eligible lists of candidates for employment that must be used in the hiring of civil service employees. *See* N.Y. Civ. Serv. Law § 60–65.

Defendant argues that:

[WCPO] does not procure employees or employment opportunities on behalf of the [defendant] Chappaqua Central School District. [WCPO] simply provides various school districts and local municipalities in Westchester County with eligible lists of employees for vacant positions so that the local municipality or school district may commence its hiring process.

Reply Mem. of Law at 3. But since the municipal civil service commission decides what names are on the lists and by what criteria those names will be chosen, that commission (in this case defendant WCPO) is responsible for "procur[ing] employees for an employer or [procuring] for employees opportunities to work for an employer" 42 U.S.C. § 2000e(c). Civil Service employers *must* hire from the eligible and preferred lists the defendant is responsible for providing. Westchester Rules, R. 9, 19. Furthermore, defendant WCPO is responsible for ensuring that the proper procedures are followed in making appointments. *See* N.Y. Const. art. 5 § 6. *See also* N.Y. Civ. Serv. Law § 15; EEOC Determination Letter (describing WCPO's mandate as the duty "to ensure that all appointments are made pursuant to civil service law").

Nonetheless, it is not necessary to decide this issue under *Brush,* because WCPO can be easily classified as an employment agency under other lines of authority.

### 2. *Other Civil Service Commission Cases*

Among the cases that consider the liability of a defendant as an "employment agency" under Title VII, there are a few in which the defendant is a state or municipal civil service commission or personnel board (or the state or municipality itself, as vicariously liable for the actions of the commission or board). In the cases most clearly apposite to this one, both from the Fifth Circuit, the defendant commission was found to be liable under Title VII as an employment agency.

In *Dumas v. Town of Mount Vernon,* 612 F.2d 974 (5th Cir.1980), the plaintiff, a black female, sued the Mobile County Personnel Board, claiming that the Board had discriminated against her in violation of Title VII. The plaintiff claimed that despite being certified as first on the list for an Assistant Town Clerk position, she was passed over for a white applicant. She further alleged that after she complained to the EEOC, the white applicant was fired and she was notified that there was no intention to fill the position.

The Fifth Circuit reversed the district court's dismissal of the claims against the Personnel Board. *Id.* at 980. Both the district and circuit courts found the Personnel Board to be an employment agency under 42 U.S.C. § 2000e(c). The district court nonetheless dismissed the complaint against the Personnel Board because, while "the Personnel Board tested the plaintiff, interviewed the plaintiff, and certified the plaintiff for consideration for the position which she sought," "[n]othing in the record establishes that the Board failed or refused to refer the plaintiff for employment or otherwise discriminated against the plaintiff." *Dumas v. Town of Mount Vernon,* 436 F.Supp. 866, 871 (S.D.Ala.1977). The Fifth Circuit disagreed, noting that "dismissal of [the plaintiff's] Title VII claim against the Personnel

Board was improper" because the plaintiff had alleged that "the Personnel Board and Town officials conspired to deprive Ms. Dumas of equal protection." 612 F.2d at 980.

The roles of the Personnel Board in *Dumas* and defendant WCPO here closely resemble each other. In both cases, the plaintiff claimed that the defendant boards had discriminated against them *subsequent* to their certification. In *Dumas*, it was alleged that the Personnel Board had conspired to keep the Assistant Town Clerk position open (to avoid hiring the plaintiff). In the present case, it is alleged that, as the EEOC put it, the defendant failed to follow "its mandate to ensure that all appointments are made pursuant to civil service law." EEOC Determination Letter.

In *Hill v. Mississippi State Employment Serv.*, 918 F.2d 1233 (5th Cir.1990), *cert. denied* 502 U.S. 864, 112 S.Ct. 188, 116 L.Ed.2d 149 (1991), the Fifth Circuit upheld a district court's dismissal of a suit alleging that the defendant had discriminatorily referred and failed to refer the plaintiff for local jobs. The Fifth Circuit found that the defendant ("MSES") was an employment agency under § 2000e(c). *Id.* at 1234 n.1. Although this finding is not surprising (MSES is, after all, an "employment service"), the services it provided are similar to those provided by WCPO.

MSES provided employers with names of potential employees, based on certain criteria. *Id.* It was up to MSES to choose the most qualified applicant(s), and thus, like WCPO, it exercised significant control over potential employees' opportunities for employment and access to those opportunities. The Fifth Circuit left no doubt that MSES was an "employment agency" under § 2000e(c), and to the extent that WCPO

and MSES perform similar duties, this Court believes that there is little doubt that WCPO is likewise an "employment agency" under that section.

### 3. *The Sibley/Spirt Approach*

Whether the rule in *MSES* and *Dumas* would be adopted in this Circuit can be answered by looking to the landmark District of Columbia Circuit case *Sibley Memorial Hospital v. Wilson*, 488 F.2d 1338, 1342 (D.C.Cir.1973), which is followed in the Second Circuit.[6] *Sibley* and its progeny "stand for the proposition that Title VII prohibits a defendant's interference 'with an individual's employment opportunities with *another employer.*'" *Kemether v. Pennsylvania Interscholastic Athletic Ass'n*, 15 F.Supp.2d 740, 762 n. 13 (quoting *Sibley*, 488 F.2d at 1341)(emphasis added). Thus "a Title VII defendant need not be the plaintiff's employer to interfere impermissibly with plaintiff's employment opportunities." *Id. Sibley* did not interpret Congress' use of "employment agency," but rather interpreted Congress' intent with regard to who falls under the purview of the statute generally. As the *Sibley* court explained:

> To permit a covered employer to exploit circumstances peculiarly affording it the capability of discriminatorily interfering with an individual's employment opportunities with another employer, while it could not do so with respect to employment in its own service, would be to condone continued use of the very criteria for employment that Congress has prohibited.

488 F.2d at 1341. The language is applicable to WCPO—if WCPO retaliated against its own employee for reporting improper procedures, it would be liable under Title

---

**6.** The Second Circuit followed *Sibley* in *Spirt v. Teachers Insurance and Annuity Ass'n* (dis-    cussed in note 5 above).

VII. In circuits that follow *Sibley,* a party in WCPO's position is presumed to be equally liable for interfering with a potential employee's opportunities with a third party.

Although WCPO does not have "Employment Agency" in its title, it undoubtedly "significantly affects access" of individuals "to employment opportunities." *Spirt,* 691 F.2d at 1063 (citations and internal quotations omitted). It creates and maintains civil service lists and makes sure relevant laws and provisions are followed. Following the line of reasoning established in *Sibley* and *Spirt,* WCPO would qualify as an "employment agency" pursuant to Title VII.

### IV. Conclusion

Defendant WCPO's Rule 12(c) motion to dismiss is denied with respect to plaintiff's Title VII claims.

This constitutes the decision and order of this Court.