**Jim and Barbra KLASSY, Plaintiffs,**

v.

**PHYSICIANS PLUS INSURANCE COMPANY and Dr. Gary Johnson, Defendants.**

No. 03-C-49-C.

United States District Court, W.D. Wisconsin.

June 9, 2003.

Timothy D. Edwards, Oregon, WI, for Plaintiffs.

Catherine M. Rottier, Boardman, Suhr, Curry & Field, Madison, WI, for Defendants.

OPINION AND ORDER

CRABB, District Judge.

This is a civil action for monetary relief in which plaintiffs Jim and Barbra Klassy

allege that defendants Physicians Plus Insurance Company and its medical director, Dr. Gary Johnson, violated federal and state law by refusing to pay for Barbra's bloodless hip revision surgery. Plaintiffs are members of the Jehovah's Witness faith who believe that the Bible prohibits them from accepting blood transfusions during medical procedures. Because defendant Physicians Plus's physicians were either unwilling or unable to perform the hip revision surgery without resort to a blood transfusion, plaintiffs went to a surgeon outside defendant Physicians Plus's provider network who successfully performed the surgery in accordance with their religious beliefs. When defendants refused to pay for the bloodless surgery, plaintiffs brought this suit in the Circuit Court for Dane County, Wisconsin, asserting six state law claims, including the tort of bad faith insurance claim denial, medical malpractice, breach of contract, breach of the implied covenant of good faith and fair dealing, "estoppel" and negligence. Plaintiffs also alleged a violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e. On January 29, 2003, defendants removed the case to this court. *See* 28 U.S.C. § 1441. Presently before the court are defendants' motion to dismiss all of plaintiffs' claims and plaintiffs' motion to remand this case to state court.

Plaintiffs' motion to remand will be denied and defendants' motion to dismiss will be granted. Plaintiffs' state law claims are completely preempted by ERISA and were thus properly removed to this court. Because those claims are preempted, they must be dismissed. However, plaintiffs will be granted leave to amend their complaint to allege a violation of ERISA. Finally, plaintiffs' federal law claim under Title VII will be dismissed because defendant Physicians Plus was not plaintiffs' employer within the meaning of that statute.

Plaintiffs' motion to remand and defendants' motion to dismiss both hinge on the facts alleged in plaintiffs' amended complaint. I will summarize the material factual allegations in the amended complaint, which for purposes of the pending motions I accept as true, then discuss plaintiffs' motion to remand and defendants' motion to dismiss.

## ALLEGATIONS OF FACT

Plaintiffs Jim and Barbra Klassy are Jehovah's Witnesses who believe that the Bible prohibits them from receiving blood transfusions. From February 1998 until July 2001, plaintiff Jim Klassy was employed as a full-time construction manager by the Renschler Corporation, a construction firm located in Dane County, Wisconsin. As an employee of the Renschler Corporation, plaintiff Jim Klassy was compensated in part through medical insurance benefits that were administered by defendant Physicians Plus. Defendant Physicians Plus provides managed care services to its plan participants in an integrated health care delivery system throughout Wisconsin. Defendant Dr. Gary Johnson is a licensed doctor of medicine in Wisconsin and is defendant Physician Plus's medical director. Defendant Physicians Plus exercises exclusive control over the distribution of medical benefits to its participants pursuant to the terms and conditions of a "Medical Plan Certificate" and related documentation that plaintiffs received shortly after plaintiff Jim Klassy began working for the Renschler Corporation. Under the certificate, defendant Physicians Plus is obligated to provide coverage for medically indicated treatment. When participating providers cannot perform medically indicated treatment, defendant Physicians Plus is obligated to pay for services through out-of-network providers.

In 1976, plaintiff Barbra Klassy received a hip replacement from Dr. Carl Nelson, who completed this surgical procedure safely without requiring Klassy to receive a blood transfusion. In 2001, while covered by her husband's insurance policy, plaintiff Barbra Klassy needed a surgical revision to the hip replacement she had received in 1976. After consulting with her Physicians Plus primary care physician, plaintiff Barbra Klassy was referred to Dr. Harvey Barash, an orthopedic surgeon and plan physician within defendant Physicians Plus's system of approved providers. After seeing Dr. Barash, plaintiff Barbra Klassy asked defendant Physicians Plus to authorize the surgical revision to her hip replacement. On June 20, 2001, defendant Johnson determined that plaintiff Barbra Klassy's request for a surgical revision to her hip replacement "was not a covered benefit" because the need for the surgery had not been "definitely established." In the same letter, defendant Johnson stated that "this surgery can be performed by a participating provider when it is required."

On June 25, 2001, Dr. Barash wrote a letter to defendant Johnson in which he stated that (1) plaintiff Barbra Klassy's need for a surgical revision to her hip was "compelling"; (2) there were no participating providers in defendant Physicians Plus's network that were willing or able to perform the surgical revision in accordance with her religious beliefs (that is, without a blood transfusion); and (3) he supported "authorization by [defendant Physicians Plus] for Dr. Carl Nelson to proceed with the surgery." To date, defendant Physicians Plus has refused to approve or pay for the out-of-network referral to Dr. Nelson. Instead, defendant Physicians Plus offered to have one of its physicians perform the surgical revision to plaintiff Barbra Klassy's hip replacement, but only if she agreed to submit to a blood transfusion.

After defendant Physicians Plus refused to certify Dr. Barash's out-of-network referral, plaintiff Barbra Klassy hired Dr. Nelson to perform the surgical revision to her hip replacement. The procedure was completed safely and successfully, without a blood transfusion and in accordance with plaintiffs' religious beliefs.

## OPINION

### A. *Motion to Remand*

Plaintiffs acknowledge that their claim under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, was properly removed because this court has original jurisdiction over civil actions arising under federal law. *See* 28 U.S.C. § 1331. However, plaintiffs ask the court to decline to exercise supplemental jurisdiction over their state law claims because those claims raise novel questions of Wisconsin law that should be addressed in the first instance by the state's courts. *See* 28 U.S.C. § 1367(c)(1) (district court may decline supplemental jurisdiction over claims that raise novel or complex issue of state law). In response, defendants argue that plaintiffs' so-called state law claims actually arise under federal law because they are completely preempted by the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. §§ 1001–1461. Alternatively, defendants argue that even if ERISA preemption does not apply, the court should exercise its supplemental jurisdiction because plaintiffs' state law claims are neither novel nor complex. Because plaintiffs' state law claims are preempted by ERISA, I will deny plaintiffs' motion to remand.

ERISA's civil enforcement provision, § 502(a), 29 U.S.C. § 1132(a), authorizes an insurance plan participant or beneficiary "to recover benefits due to him under the terms of the plan [or] to enforce

his rights under the terms of the plan." When "a state law claim has been 'displaced' and therefore completely preempted by § 502(a), then a plaintiff's state law claim is properly 'recharacterized' as one arising under federal law." *Rice v. Panchal,* 65 F.3d 637, 640 (7th Cir.1995) (citations omitted). In other words, "ERISA occupies much of the field of pension and fringe benefits; the size and distribution of these benefits depends on federal law [and] a claim to benefits necessarily 'arises under' federal law no matter how it is pleaded." *Lehmann v. Brown,* 230 F.3d 916, 919 (7th Cir.2000) (citations omitted). Thus, a plaintiff cannot simply repackage as a state law tort a claim for benefits that is otherwise actionable under § 502(a). ERISA provides the plaintiff's exclusive route to recovery. *See Pilot Life Insurance Co. v. Dedeaux,* 481 U.S. 41, 54, 107 S.Ct. 1549, 95 L.Ed.2d 39 (1987) ("[T]he detailed provisions of § 502(a) set forth a comprehensive civil enforcement scheme that ... would be completely undermined if ERISA-plan participants and beneficiaries were free to obtain remedies under state law that Congress rejected in ERISA."). However, when a complaint genuinely does not assert a claim to benefits, but instead "alleges that a welfare-benefit plan has committed a tort—for example, when a physician employed by a HMO that has been offered as a benefit to employees commits medical malpractice—the claim must arise under state law, because ERISA does not attempt to specify standards of medical care." *Id.* at 920. The question in this case is whether plaintiffs' claims are categorized more appropriately as an effort to recover benefits allegedly due them under their Physicians Plus plan or, on the other hand, as genuine state law torts, irrespective of the way plaintiffs have labeled their claims in their amended complaint. If the former, then plaintiffs' motion to remand must be denied because their claims fall within the

scope of § 502(a), over which this court has original jurisdiction. *Rice,* 65 F.3d at 640.

In arguing that their state law claims fall outside the scope of § 502(a), plaintiffs rely on the Supreme Court's decision in *Pegram v. Herdrich,* 530 U.S. 211, 120 S.Ct. 2143, 147 L.Ed.2d 164 (2000). In that case, the Supreme Court held that when the physician employees of a health maintenance organization make treatment decisions, they are not acting as fiduciaries within the meaning of ERISA. *Id.* at 214. *Pegram* involved a HMO physician who discovered an inflamed mass in a patient's abdomen. Despite the discovery, the physician delayed the use of an ultrasound diagnostic procedure for a week so that the ultrasound could be preformed at a distant facility affiliated with the HMO, rather than at the local hospital. Before the week was out the patient's appendix ruptured, precipitating a suit for medical malpractice and a claim that the HMO had breached a fiduciary duty under ERISA by encouraging its physicians to make medical decisions on the basis of financial rewards the physicians would reap by virtue of limiting treatment costs and on their patients' medical needs and best interests. *Id.* at 215–16, 120 S.Ct. 2143.

In reaching its conclusion that medical treatment decisions are not fiduciary acts under ERISA, the Court drew a distinction between an HMO's "pure 'eligibility decisions' [which] turn on the plan's coverage of a particular condition or medical procedure," and "treatment decisions," which "are choices about how to go about diagnosing and treating a patient's condition." *Id.* at 228, 120 S.Ct. 2143. Moreover, the Court noted that, frequently, the "eligibility decision and the treatment decision [are] inextricably mixed." *Id.* at 229, 120 S.Ct. 2143. That was the situation in the case before it, in which the physician

"decided (wrongly, as it turned out) that [the pateint's] condition did not warrant immediate action" and as a consequence of that treatment decision the HMO "would not cover immediate care, whereas it would have done so if [the physician] had made the proper diagnosis and judgment to treat." *Id.* The Court held that "Congress did not intend ... any ... HMO to be treated as a fiduciary to the extent that it makes mixed eligibility decisions acting through its physicians." *Id.* at 231, 120 S.Ct. 2143. The Court feared that because mixed eligibility and treatment decisions involve the exercise of a physician's medical judgment, "every claim of fiduciary breach by an HMO physician making a mixed decision would boil down to a malpractice claim." Thus, it concluded that the plaintiff had failed to state a claim under ERISA for breach of a fiduciary duty.

On the basis of the Court's reasoning in *Pegram*, plaintiffs argue that "complete preemption does not justify removal to federal court when plaintiffs challenge mixed questions of eligibility and treatment" and that defendant Johnson "made a classic determination of 'mixed eligibility and treatment' that does not arise under ERISA" when he refused to authorize an out-of-network referral to a physician who could perform plaintiff Barbra Klassy's hip surgery without a blood transfusion. Plts.' Mot. to Remand to State Court, dkt. # 10, at 10, 14. I note that *Pegram*, 530 U.S. at 229 n. 9, 120 S.Ct. 2143, the court did not address issues of preemption, removal or the interaction between § 502(a) and state law claims. However, even assuming that it is inappropriate to remove certain state law claims involving a mixed eligibility and treatment decision, *see, e.g., Cicio v. Does 1–8*, 321 F.3d 83, 102 (2nd Cir.2003), plaintiffs never explain why defendant Johnson's refusal to authorize the referral was such a mixed decision rather than a straightforward eligibility question. In-

deed, I agree with defendants that their decision not to pay for an out-of-network bloodless hip surgery was a pure eligibility decision that must be challenged pursuant to § 502(a) of ERISA or not at all.

According to the allegations in plaintiffs' complaint, defendant Johnson determined initially that the hip surgery "was not a covered benefit" because the need for the surgery had not been "definitely established." Five days later, after a Physicians Plus orthopedic surgeon wrote to defendant Johnson stating that plaintiff Barbra Klassy's need for the surgery was "compelling," defendant Physicians Plus offered to have one of its surgeons perform the surgery, albeit without offering to accommodate plaintiffs' religious beliefs by insuring that the procedure would be done without a blood transfusion. In *Pegram*, 530 U.S. at 228, 120 S.Ct. 2143, the Court made clear that "treatment decisions" are "choices about how to go about diagnosing and treating a patient's condition: given a patient's constellation of symptoms, what is the appropriate medical response?" The decision whether an insurance plan covers an operation performed in such a fashion as to accommodate a patient's interpretation of the Bible does not involve assessing the patient's symptoms, but rather her religious sensibilities. Plaintiffs do not challenge as medically inadequate or untimely the traditional hip surgery that defendants authorized and agreed to pay for. Rather, their objection rests on religious grounds, not medical ones, and therefore would not require defendant Johnson, or any other doctor, to invoke his medical expertise and judgment. Thus, the refusal to refer plaintiff Barbra Klassy to a surgeon capable of performing the hip revision in accordance with her religious beliefs was an eligibility decision, not a treatment decision or a mixed decision of eligibility and treatment. All of plaintiffs' ostensible state law claims hinge

on their characterization of defendant Johnson's decision as mixed. *See* Plts.' Mot. to Remand to State Court, dkt. # 10, at 4 (arguing that in each state law claim, they are alleging that defendant Johnson "made a mixed decision of eligibility and treatment that does not fall within ERISA's civil enforcement provisions"). Because I have concluded that defendant Johnson's decision was one of pure eligibility that falls within the scope of § 502(a), plaintiffs' state law claims are "in effect a claim for denial of benefits" under ERISA. *Jass v. Prudential Health Care Plan. Inc.,* 88 F.3d 1482, 1489 (7th Cir.1996). Therefore, all of plaintiffs' state law claims are preempted by ERISA and plaintiffs' motion to remand must be denied.

### B. *Motion to Dismiss*

■ Because I have determined that plaintiffs' state law claims are preempted by ERISA, those claims must all be dismissed. *See, e.g., Cicio,* 321 F.3d at 97 ("In the preemptive shadow of ERISA, no state cause of action can lie."). Moreover, as plaintiffs acknowledge, they "do not seek relief under ERISA in their First Amended Complaint." Plts.' Mot. to Remand to State Court, dkt. # 10, at 4. This fact is underscored by plaintiffs' failure to name as a defendant their Physicians Plus medical *plan* as an entity. *See Jass,* 88 F.3d at 1490 (" 'ERISA permits suits to recover benefits only against the Plan as an entity.' ") (citation omitted). Plaintiffs have named as defendants Physicians Plus Insurance Company and its medical director, Dr. Gary Johnson. These are the wrong defendants for purposes of a claim under ERISA. However, because I have recharacterized plaintiffs' state law claims as a claim for the denial of benefits due them under the terms of the plan, I will allow plaintiffs to amend their complaint to name an appropriate defendant and seek appropriate relief under § 502(a), assuming of course that they believe they have a viable claim under ERISA. *Id.* at 1491.

■ That leaves plaintiffs' claim for religious discrimination under Title VII. Plaintiffs' initial hurdle is their failure to allege that they have obtained a right-to-sue letter from the Equal Employment Opportunity Commission. Although the "receipt of a right-to-sue letter is not a jurisdictional prerequisite to bringing a Title VII suit," defendants can assert the lack of such a letter as a defense, *Worth v. Tyer,* 276 F.3d 249, 259 (7th Cir.2001), subjecting plaintiffs' Title VII claim to possible dismissal at any time prior to the receipt of such a letter. *See Perkins v. Silverstein,* 939 F.2d 463, 471 (7th Cir. 1991). In any case, plaintiffs' Title VII claim is a non-starter because I conclude that defendant Physicians Plus was not plaintiff Barbra Klassy's employer within the meaning of Title VII.

Title VII makes it "an unlawful employment practice for an employer ... to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's ... religion." 42 U.S.C. § 2000e–2(a). An "employer" under Title VII is "a person engaged in an industry affecting commerce who has fifteen or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year, and any agent of such a person." 42 U.S.C. § 2000e(b). An employee is "an individual employed by an employer." 42 U.S.C. § 2000e(f). As defendants point out, neither plaintiff Barbra Klassy nor her husband, Jim Klassy, was ever employed by defendant Physicians Plus. Nevertheless, plaintiffs argue that the employer-employee relationship required under Title VII has been defined broadly enough to authorize a suit by an employee not against her employer, but against her employer's insurance carrier for an allegedly discriminatory benefits decision.

Plaintiffs rely on *Spirt v. Teachers Insurance & Annuity Assoc.*, 691 F.2d 1054 (2d Cir.1982), *vacated on other grounds*, 463 U.S. 1223, 103 S.Ct. 3565, 77 L.Ed.2d 1406 (1983). In that case, the defendants were two insurance companies set up specifically to serve university employees. The plaintiff was an employee of Long Island University who was required to participate in the retirement benefits program run by the defendants. She sued the insurance companies for violating Title VII by using gender-based mortality tables in calculating pension benefits that resulted in female beneficiaries' receiving smaller monthly retirement payments than their male colleagues. The defendants argued that Title VII was inapplicable because they were not the plaintiff's employer within the meaning of the statute. The Court of Appeals for the Second Circuit acknowledged that the plaintiff "clearly [was] not an employee of [the insurers] in any commonly understood sense." *Id.* at 1063. Nevertheless, the court of appeals concluded that "it is generally recognized that 'the term 'employer,' as it is used in Title VII, is sufficiently broad to encompass any party who significantly affects access of any individual to employment opportunities, regardless of whether that party may technically be described as an 'employer' of an aggrieved individual as that term has generally been defined at common law.'" *Id.* Because the insurers "exist[ed] solely for the purpose of enabling universities to delegate their responsibility to provide retirement benefits for their employees" they were "so closely intertwined with those universities ... that they must be deemed an 'employer' for purposes of Title VII." *Id.; but see Peters v. Wayne State University*, 691 F.2d 235, 238 (6th Cir.1982) (holding that same two insurance companies could not be held liable under Title VII because an insurance company cannot "become liable under Title VII simply by furnishing its services to a Title VII employer"), *vacated on other grounds*, 463 U.S. 1223, 103 S.Ct. 3566, 77 L.Ed.2d 1406 (1983).

As defendants point out, it is questionable whether *Spirt* remains good law in the Second Circuit. In *York v. Association of the Bar*, 286 F.3d 122, 125 (2d Cir.2002), the court of appeals noted that "'a prerequisite to considering whether an individual is [an employee under Title VII] is that the individual have been hired in the first place'" and that the question "'usually turns on whether he or she has received direct or indirect remuneration from the alleged employer.'" (Citations omitted). Thus, "'[w]here no financial benefit is obtained by the purported employee from the employer, no 'plausible' employment relationship of any sort can be said to exist.'" *Id.* at 126. This definition of the requisite employment relationship would have undermined Ms. Spirt's claim because there was no evidence that she was hired or remunerated by the insurance companies. Rather, the insurance companies merely provided benefits that were paid for by the university where she worked. At least one district court in the Second Circuit has recognized the discrepancy between *Spirt* and the more recent Second Circuit cases defining the employment relationship necessary to support a Title VII claim. *See Scaglione v. Chappaqua Central School Dist.*, 209 F.Supp.2d 311, 315 n. 5 (S.D.N.Y.2002) (noting that more recent cases "appear to contradict the ... holding in [*Spirt* ]" and concluding that "a direct employment relationship is a necessary trait of a Title VII 'employer' ").

Even assuming that *Spirt* remains good law, I cannot conclude that defendant Physicians Plus was plaintiffs' employer within the meaning of Title VII. There is no indication that defendant Physicians Plus "exist[s] solely for the purpose of enabling" plaintiff Jim Klassy's employer, the

Renschler Corporation, to delegate its responsibility to provide health benefits for its employees or that plaintiffs are required to participate in the Physicians Plus plan, features that were critical to the holding in *Spirt,* 691 F.2d at 1063. Indeed, if plaintiffs' theory is correct, for purposes of Title VII, defendant Physicians Plus "employs" every employee of every company that contracts with Physicians Plus to provide health care coverage for its workers. In the absence of some clear indication in the statute, I am reluctant to infer that Congress intended to impose such potentially wide-ranging liability on insurers. Moreover, defendant Physicians Plus did not discriminate against plaintiffs "with respect to [their] compensation," 42 U.S.C. § 2000e-2(a), because it did not provide plaintiffs with any compensation. Plaintiffs were compensated by the Renschler Corporation. *See Deal v. State Farm County Mutual Insurance Co.,* 5 F.3d 117, 119 n. 3 (5th Cir. 1993) (insurance company does not provide employee benefits merely because her employer selected insurance company's products). In short, defendant Physicians Plus was not plaintiffs' "de facto or indirect" employer for purposes of Title VII. *E.E.O.C. v. Illinois,* 69 F.3d 167, 171–72 (7th Cir.1995).

Title VII applies to employers *and* their agents. *See* 42 U.S.C. § 2000e(b). To the extent that an agency theory is distinguishable from the theory of liability articulated in *Spirt,* the facts alleged in plaintiffs' complaint cannot support the theory that defendant Physicians Plus is an agent of plaintiff Jim Klassy's employer, the Renschler Corporation. *See Deal,* 5 F.3d at 119 (agent under Title VII must be agent with respect to *employment practices* such as right to hire and fire, supervise work, set schedules, pay salary, withhold taxes or provide benefits); *Swallows v. Barnes & Noble Book Stores, Inc.,* 128 F.3d 990, 996 (6th Cir.1997) (same). Ac-

cordingly, I will grant defendants' motion to dismiss plaintiffs' Title VII claim.

In summary, plaintiffs' Title VII claim will be dismissed because defendant Physicians Plus was not plaintiffs' employer within the meaning of Title VII. In addition, plaintiffs' state law claims are completely preempted by ERISA. Accordingly, those claims were properly removed to this court and must be dismissed because they are appropriately characterized as an effort to recover plan benefits, for which ERISA provides the exclusive avenue of relief. If plaintiffs believe they have a viable claim under ERISA, they may amend their complaint to name an appropriate defendant and to seek appropriate relief under that statute.

## ORDER

IT IS ORDERED that

1. Plaintiffs Jim and Barbra Klassy's motion to remand their state law claims for bad faith insurance claim denial, medical malpractice, breach of contract, breach of the implied covenant of good faith and fair dealing, "estoppel" and negligence to the Dane County circuit court is DENIED.

2. Defendants Physicians Plus Insurance Company and Dr. Gary Johnson's motion to dismiss all of plaintiffs' claims is GRANTED. Plaintiffs may have until June 20, 2003, in which to file an amended complaint, asserting a claim under ERISA. If by that date plaintiffs have not filed an amended complaint, the clerk of court is directed to enter judgment for defendants and close this case.